UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| RED ROVER GROUP, LLC | : | CIVIL ACTION NO._____ |
| VERSUS | : | JUDGE: |
| CITY OF BOSSIER CITY; STEVEN PENNELL, *in his individual and official capacity;* WADE RICH, *in his individual and official capacity*, RODNEY TAYLOR, *in his individual and official capacity*, and | : | MAGISTRATE JUDGE |
| CHARLES JACOBS, *in his official capacity*. | : | JURY TRIAL |

## **COMPLAINT**

Plaintiff Red Rover Group, LLC ("Plaintiff" or "Red Rover") brings this action for declaratory and injunctive relief, as well as for damages, for violations of its Fourth, Fifth Fourteenth Amendment rights under the United States Constitution as well as for violations of the Louisiana Constitution and Louisiana tort law.

## **INTRODUCTION**

Abusing their positions of power to interfere with Red Rover's boarding, training and kenneling of man's best friend, the hereinafter named Defendants have orchestrated a regime of fear and intimidation through mafioso-tactics to stifle a small business's operations. Through an intentional series of actions and inactions, Defendants have used and abused their positions of power and influence with Bossier City to unconstitutionally suppress and attack Plaintiff's ongoing business operations. This lawsuit is filed to enforce Plaintiff's constitutional and state law rights to operate their small business without malicious and illegal government interference.

## JURISDICTION AND VENUE

1.   This is an action for declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983 based upon the continuing violations of the Plaintiff's rights under the Fourth, Fifth, Fourteenth Amendment to the United States Constitution.

2.   This Court has jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law. Supplemental jurisdiction over the state law claims is proper under 28 U.S.C. § 1367.

3.   Venue is proper in this District because Defendants City of Bossier City, Pennell, Rich, and Taylor are all residents of Bossier Parish, and Defendant Jacobs is a resident of Webster Parish, which are within the jurisdiction of the Western District of Louisiana. Additionally, the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b).

## PARTIES

4.   Plaintiff Red Rover Group, LLC, is a limited liability company, organized under the laws of the State of Louisiana, whose primary business address is 606 Stockwell Road, Bossier City, Louisiana 71111. Members of Red Rover are Cody McKellar ("McKellar"), a resident of Bossier Parish, Louisiana, and Quentin Koury ("Koury"), a resident of Bossier Parish, Louisiana. At all relevant times herein, McKellar and Koury were acting as agents and representatives of Plaintiff.

5.   Defendant Steve Pennell ("Pennell"), individually and in his official capacity as the Deputy Chief of Operations for the City of Bossier City, who is a person of full age of majority and a resident of the Western District. At all relevant times herein, Pennell was acting under the color of state law and in the course and scope of his employment for the City of Bossier City.

6.   Defendant Wade Rich ("Rich"), individually and in his official capacity as the Director of Public Works for the City of Bossier City, who is a person of full age of majority and a resident of

the Western District. At all relevant times herein, Rich was acting under the color of state law and in the course and scope of his employment for the City of Bossier City.

7.   Defendant Rodney Taylor ("Taylor"), individually and in his official capacity as Director of Permits & Inspections Division for the City of Bossier City, who is a person of full age of majority and a resident of the Western District. At all relevant times herein, Taylor was acting under the color of state law and in the course and scope of his employment for the City of Bossier City.

8.   Defendant Charles Jacobs ("Jacobs"), in his official capacity as City Attorney for the City of Bossier City, is a person of full age of majority and a resident of the Western District. At all relevant times herein, Jacobs was acting under the color of state law and in the course and scope of his employment for the City of Bossier City.

9.   Defendant City of Bossier City ("Bossier City") is a juridical entity capable of suing and being sued. It is a political subdivision of the State of Louisiana, located within the Parish of Bossier.[1]

**FACTUAL ALLEGATIONS**

**RED ROVER OPENS ITS DOORS TO ALL DOGS**

10.  Plaintiff is the owner and operator of a dog boarding, daycare, training, and grooming facility located at 606 Stockwell Road, Bossier City, Louisiana 71111 (the "Premises").

11. Plaintiff acquired Premises, on or about August 30, 2021, and immediately began operating.

12.  Pennell is believed to own or occupy the immovable property adjacent to Plaintiff, bearing the municipal address 608 Stockwell Road, Bossier, City, Louisiana 71111.

---

[1]      Pennell, Rich, Taylor, Jacobs, and Bossier City are sometimes collectively referenced herein as "Defendants."

13. This matter began as a simple complaint of alleged noisiness by Pennell to Plaintiff and spiraled into an abuse-of-power by a local government officer against his neighbor, using every tool and connection that he has.

### PENNELL BEGINS TO CONFRONT RED ROVER'S OWNERS

14. Shortly after acquiring the Premises, Pennell called the owner of Plaintiff, McKellar, to inform him of barking dogs. McKellar directed his staff to take any dogs which were barking into the Premises.

15. After a few telephone calls between Pennell and McKellar, Pennell stated that he planned to sell his house around the beginning of 2022. McKellar offered to purchase Pennell's house.

16. On or about October 14, 2021, McKellar and his daughter stopped by Pennell's house to formally introduce himself and view the house with the intention to purchase it.

17. Pennell's complaints about barking dogs continued, and each time Pennell reached out to McKellar, the situation was handled by bringing the barking dogs inside.

18. No complaints were made as to barking dogs during nighttime hours.

19. On or about December 26, 2021, Pennell escalated the situation. First, he complained about the barking dogs. He was told that Red Rover was following standard operating procedure by bringing in any dogs which were deemed too noisy, but due to the holiday weekend, Red Rover was at capacity (*i.e.*, there were more dogs than normal which had to be taken outside during the daytime).

20. On or about December 27, 2021, Pennell texted McKellar attaching a brief video where dogs were barking part of the time along with the following:

> [T]his is trying to be mindful of barking dogs? Excessive barking of such a loudness, intensity and duration as to prevent or interfere with a person's ability to enjoy his property. That's what I suggest you stop allowing.

The text did not identify when the video was taken.

21. McKellar did not respond to Pennell's inflammatory December 27, 2021, text message.

**PENNELL BEGINS ENLISTING CITY OFFICIALS TO HARASS RED ROVER**

22. On or about December 29, 2021, Rich[2] lodged a complaint via telephone with Bossier City Animal Control (herein, "BCAC") for "excessive barking at Red Rover dog boarding.[3]

23. On or about December 31, 2021, BCAC employees "Judy, Kay and Shari" travelled to the Premises to observe the Premises and to determine if there was excessive barking. "Shari" from the December BCAC Incident Report is believed to be Shari Wood, the superintendent for Animals Services for Bossier City (herein, "Wood").

24. Upon the BCAC's employees' arrival, they were given a full tour of the Premises by Koury, where they observed that any dog which barked more than normal was "removed within minutes" and another dog was taken outside. While the BCAC employees noted that they heard "a little barking once in a while" they did not "consider [the barking] consistent or excessive." BCAC employees were informed that whenever Pennell would send a text message complaining of barking, said dogs would be moved inside the Premises. The BCAC employees and Koury "discussed, in length," potential solutions and that Koury "was very open to discussing options and hearing suggestions." The BCAC employees and Koury agreed that BCAC would follow up in a month or two to allow Red Rover to come up with and implement a plan.

25. After the meeting with the BCAC employees, McKellar was informed by a Red Rover employee that a day or two prior, a gun was shot in the air from the Pennell residence.

---

[2]     Upon information and belief, Pennell instructed or requested that Rich make the complaint because of Rich's position with the City, specifically his position over Bossier City Animal Control.
[3]     A copy of the first BCAC Incident Report, dated December 29, 2021, Incident Report No. 007132, is attached hereto as Exhibit 1 (the "December BCAC Incident Report")

26. In response to learning of gunfire from the Pennell residence, McKellar filed a police report on January 4, 2022, with the Bossier City Police Department ("BCPD").[4]

27. The Red Rover employee, who heard and witnessed the gunshot, was not able to identify the person who shot the gun from the Pennell residence, but based upon his training in the military, he was particularly aware of what gunfire sounds and looks like, and he could confirm that it was in fact a gunshot from the Pennell residence.

28. McKellar, on behalf of Red Rover, did not pursue charges against Pennell due to McKellar's belief that Pennell would use his position of power to retaliate against McKellar and Red Rover—a belief that would soon be transformed into a reality.

29. On or about January 11, 2022, Plaintiff was informed that Pennell and Rich were working together in an attempt to have Plaintiff's operating permits with Bossier City revoked.

**RED ROVER TAKES ALL REASONABLE PRECAUTIONS TO APPEASE PENNELL**

30. On or about March 3, 2022, BCAC returned to the Premises for a follow-up inspection. The December BCAC Incident Report noted that Red Rover installed sound-dampening paneling between the Premises and Pennell's residence and that Red Rover installed barking deterrents. In sum, the December BCAC Incident Report concludes that "everything appeared appropriate and that [Red Rover] seemed to be doing everything possible and within their budget to help prevent noise from disturbing the peace of the resident living behind them."[5]

31. The electronic bark deterrent device that Plaintiff installed on the Premises omits a high frequency noise to prevent barking. Although Plaintiff lost business over the installation of the electronic bark deterrent as some pet owners stated their dogs no longer enjoyed being on the Premises, Plaintiff maintained the electronic bark deterrent in the spirit of comity.

---

[4]     A true and correct copy of the January 4, 2022 police report is attached hereto as Exhibit 2.
[5]     *See*, Exhibit 1, December BCAC Incident Report.

32. In addition to the property improvements noted in the previous paragraph, McKellar on multiple occasions in or around March 2022 offered to purchase Pennell's home at well above market price.

### PENNELL'S HENCHMEN CONTINUE TO HARASS RED ROVER

33. Despite the prior finding of BCAC of no signs of excessive barking, on or about May 9, 2022, Rich again complained to BCAC of excessive barking.[6]

34. In response to the second BCAC complaint, on or about May 11, 2022, Wood on behalf of BCAC again visited the Premises to determine whether "excessive barking" was occurring. Upon the BCAC employee's arrival on the Premises, they "heard no barking." Over the span of thirty (30) minutes, the BCAC employee noted that "a time or 2" she heard barking when a dog was taken outside. She further noted that most of the barking was from inside the building, which could not be heard from the outside. Specifically, the BCAC employee "heard no significant or prolonged barking, or even what [she] would call intermittent barking (which would be a couple [of] barks, wait a few seconds, [and] a couple more barks)[.]" Further, the BCAC employee "observed multiple bark deterrent items in use." The foregoing was summarized in a second BCAC Incident Report (the "May BCAC Incident Report").[7]

35. Upon information and belief, Rich used his position as Head of Public Works to influence whether BCAC, a division of Public Works, would frivolously investigate and fine Red Rover.

36. On or about July 8, 2022, when Red Rover's owners arrived at the Premises on mid-day, BCPD was already at the Premises, along with Rodney Taylor, Director of Permits for Bossier

---

[6]     Upon information and belief, Rich's second complaint was also made on behalf of Pennell, due to Rich's position with the City as Head of Public Works.

[7]     A true and correct copy of the May BCAC Incident Report, dated May 8, 2022, Incident Report No. 007134, is attached hereto as Exhibit 3.

City. BCAC issued a citation to McKellar for "excessive barking," supposedly in violation of "14:61."[8] The original citation was voided and reissued on behalf of the City Attorney's office.[9]

37. Although the newly issued citation on behalf of the City Attorney's office stated that was for a violation of "14:61," the official charge against McKellar was for violation of "Section 46-31 Par. B4 of the City Code of the City of Bossier City" specifically alleging that Plaintiff "did unlawfully keep any animal, bird, or fowl that caused frequent or long continued noise, which disturbed the comfort or repose of any person in the vicinity."

38. Red Rover called BCAC to inform them that they were receiving a citation for barking by "a Bossier City Police officer."[10] Wood, on behalf of BCAC, travelled to the Premises to witness the interaction and the reason for the ticket being given. Wood noted that she "didn't hear barking upon [her] arrival." She memorialized that there was some barking inside, but "the barking from inside couldn't be heard." The July BCAC Incident Report explicitly notes that BCAC employee "was instructed to stand down and stay out of the situation by Public Works Director, Rich."[11]

39. The Bossier City Police Department's incident report for the July 8, 2022, incident is attached hereto as Exhibit 6 (the "BCPD Incident Report").

40. The BCPD Incident Report states that a Bossier City Police Officer "was instructed by director of commissions Rodney Taylor acting on the behave [sic] of the city attorney's office to issue McKellar a citation for excessive barking." Thereafter, the BCPD Incident Report states that a citation (T-506156) was issued for violation of "city ordnance 14-63 excessive barking."[12]

---

[8]    "14:61" is believed to refer to Section 14-61 of the Bossier City Code of Ordinances.
[9]    A copy of the reissued citation issued to McKellar is attached hereto as Exhibit 4.
[10]   A true and correct copy of the third BCAC Incident Report, dated July 8, 2022, Incident No. 007138, is attached hereto as Exhibit 5 (the "July BCAC Incident Report").
[11]   Exhibit 5, July BCAC Incident Report.
[12]   The July BCPD Incident Report states that a citation was issued for violation of "city ordnance 14-63" while the actual citation states that it was issued pursuant to "14-61."

## RED ROVER EXTENDS AN OLIVE BRANCH TO PENNELL

41. On or about July 18, 2023, a meeting was held between Jacobs, Pennell, Plaintiff's agent, and Tommy Chandler, the Mayor of Bossier City, to discuss the possibility of resolving the dispute Pennell had with Plaintiff.

42. The attendees discussed the possibility that Bossier City could build a sound barrier between the Premises and Pennell's house.

43. At the meeting it was also discussed that the East Bank District in Bossier City generates significantly more noise than the Premises, at various hours of the night, but has not been subject to the same scrutiny that Plaintiffs have.

44. The meeting concluded with the parties agreeing that Plaintiff and Pennell should work toward a mutual agreement to settle their dispute, and if so, Jacobs would make the ticket issued to McKellar "go away."

45. Despite his promises at the meeting, Pennell never attempted to reach a mutual agreement with Plaintiff on any issue and, in an affront to his promise, continues to harass Plaintiff through his connection with Bossier City.

46. On or about July 29, 2022, Plaintiff followed up with Jacobs about a potential solution and a video recording of music playing from the East Bank District to illustrate the different noise levels. Jacobs did not respond to Plaintiff's email.

47. On or about September 23, 2022, Pennell alleged, via text message to McKellar, that he met with "the sound wall guy" who was supposedly of the opinion that sound wall would not appropriately dampen the noise. McKellar responded, asking if it would have been beneficial for him to be present at that alleged meeting. Pennell did not respond.

## PLAINTIFF CONTINUES TO BE HARASSED BY CITY OFFICIALS

48.  On or about July 20, 2022, a member of Bossier City Fire Department, Fire Prevention Bureau came to the Premises to perform an inspection.

49. The timing of the inspection was particularly peculiar as Red Rover had only been open ten months and the inspection came one working day after an anonymous complaint was made to a local news organization about Pennell and Taylor.

50. Upon information and belief, this was another strong-arm tactic by Pennell to use his influence with Bossier City to harass and target Plaintiff.

## PENNELL PUBLISHED INFLAMMATORY STATEMENTS ABOUT RED ROVER

51.  Not being content with privately accosting Plaintiff, on or about August 19, 2022, Pennell took to Facebook to make a long and exaggerated post regarding Red Rover, as well as other complaints that he generally had in his life.

52. The August 19, 2022, Facebook Post named McKellar personally.

53. A former employee, Morgan Dobbs, who left under unfavorable circumstances and another individual, Liza Ruple, commented on the Facebook post, advising current and potential customers not to use Red Rover. Said Facebook comments have since been deleted, but Plaintiff has retained proof of the same.

54. Upon information and belief, Pennell, Dobbs, and Ruple's social media activity caused Plaintiffs to lose customers, business revenue and goodwill in the community.

## RED ROVER IS CRIMINALLY INVESTIGATED AT THE BEHEST OF PENNELL

55. Thereafter, upon information and belief, Dobbs and Ruple, acting on behalf of Pennell, lodged a complaint with BCAC, which spawned a police complaint, alleging animal cruelty.

56. Because of the complaint to BCAC, BCAC contacted BCPD to open an investigation.

57. In the initial investigative report, Wood, BCAC's superintendent noted the following:

    A.  None of the accusations by Dobbs and/or Ruple had been, corroborated by BCAC.

    B.  Although Dobbs stated that she witnessed "several questionable situations" at Red Rover, BCAC had been to the Premises multiple times and not witnessed any criminal behavior.

    C.  BCAC had not received any other complaints from other pet owners who have used Red Rover.

58. The November 10, 2022, BCPD report concluded, "due to a lack of evidence in this case, no offense was applied at this time."[13]

59. On or about December 19, 2022, Wood contacted Red Rover about potentially fostering/rescuing a dog, a clear sign that Wood and BCAC did not believe the complaints of animal cruelty.

60. On or about December 29, 2022, BCPD came to the Premises with a search warrant pursuant to the November 10, 2022, BCPD Report. Nothing was taken from the Premises, but police advised Plaintiff's minor worker that the owners of Red Rover needed to come to the police station to collect a ticket.

61. Upon information and belief, Pennell or someone on his behalf, called or went in person BCPD for ten (10) consecutive days, complaining about Red Rover. BCPD issued a ticket to appease the caller.

62. The following day, an owner of Red Rover went to BCPD and was issued a ticket to failure to care for animals. This ticket was eventually dismissed.

---

[13]    A true and correct copy of the November 10, 2022 BCPD Report is attached hereto as Exhibit 7.

63. On or about March 8, 2023, BCPD again came to the Premises to issue Plaintiff a ticket. An owner of Plaintiff was not present when BCPD arrived, but later that same day, McKellar went to the police station and was issued a ticket for violation of "14-63" for "Animal Nuisance/Barking."

64. Thereafter, Plaintiff met with Charles Jacobs and Richard Ray, a Bossier City attorney, regarding settling the matters addressed herein. Jacobs met with several city council members, and Pennell participated in the meeting via telephone, but settlement never came from these meetings.

65. On or about May 2, 2023, BCAC issued a citation to the owners of Red Rover for violation of "14-63c" for "Nuisance – Repeatedly at large, noise, smell, etc."

## CAUSES OF ACTION

## COUNT ONE: 42 U.S.C. § 1983—PERMANENT INJUNCTION

66. This is an action against Defendants for the deprivation of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

67. At all relevant times hereto, Defendants were acting under the color of state law. Further, Defendants were acting pursuant to the policies and customs of the Bossier City.

68. The continual harassment, civil citation, and searching/inspection of the Plaintiff's Premises were initiated without probable cause. Defendants knew or reasonably should have known that no probable cause existed to support the citations issued against Plaintiff, but they intentionally and maliciously pursued such actions.

69. The actions of Defendants were taken in bad faith and for the purposes of harassment.

70. Defendants, through the actions described hereinabove, have deprived Plaintiff of his rights, privileges, and immunities secured by the Fourth, Fifth and Fourteenth Amendments of the

United States Constitution, including but not limited to the right to be free from unreasonable and unlawful seizures of its person and the right to be free from bad faith prosecutions.

71. As a direct and proximate, foreseeable result of the violations of Plaintiff's constitutional rights, including the rights guaranteed him by the Fourth, Fifth, and Fourteenth Amendments, and the misconduct of Defendants, as set forth hereinabove, Plaintiff has suffered and will continue to suffer irreparable harm absent this Honorable Court's intervention.

<u>**COUNT TWO: 42 U.S.C. § 1983—FAILURE TO INTERVENE**</u>

72.  At all relevant times hereto, Defendants were acting under the color of state law. Further, Defendants were acting pursuant to the policies and customs of the Bossier City.

73. Defendants, through the actions described hereinabove, have deprived Plaintiff of his rights, privileges, and immunities secured by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, including but not limited to the right to be free from unreasonable and unlawful seizures of his person and the right to be free from bad faith prosecutions.

74. Throughout the entire investigation by Bossier City of the above-described noise complaints, Bossier City Officials, as well as Defendants, had a realistic opportunity to intervene and prevent the deprivation of Plaintiff's constitutional rights but failed to do so.

75. As a result of their failure to intervene, Plaintiff suffered injuries, including loss of business revenue, customers and goodwill in the community, as well as having to incur attorney's fees to defendant against the frivolous complaints brought against it.

76. Plaintiff is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT THREE: 42 U.S.C. § 1983—DUE PROCESS & EQUAL PROTECTION VIOLATION

77.  At all relevant times hereto, Defendants were acting under the color of state law. Further, Defendants were acting pursuant to the policies and customs of the Bossier City.

78. Defendants, through the actions described hereinabove, have deprived Plaintiff of his rights, privileges, and immunities secured by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, including but not limited to the right to be free from unreasonable and unlawful seizures of his person and the right to be free from bad faith prosecutions.

79. Through the actions described hereinabove, Defendants have denied Plaintiff equal protection of the laws by failing to treat Plaintiff equally as all other citizens and have failed to equally enforce its laws against all other citizens. Defendants' actions were performed intentionally, maliciously, and with reckless disregard of Plaintiff's constitutional rights.

80. As a direct and proximate, foreseeable result of the violations of Plaintiff's constitutional rights, Plaintiff suffered injuries including, loss of business revenue, loss of goodwill in the community, as well as having to incur attorney's fees to defendant against the frivolous complaints brought against it.

81. Plaintiff is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT FOUR: 42 U.S.C. § 1983—POLICY AND CUSTOM

82. At all relevant times hereto, the employees, agents and/or deputies of Bossier City, including Defendants, were acting under the color of state law and pursuant to the polices and customs of Bossier City.

83. Bossier City, through its agents, employees, and deputies, and through its policymaker and supervisors maintained, *inter alia*, the following unconstitutional customs, practices and/or policies:

    A.  Issuing civil citations without factual support;

    B.  Providing inadequate training regarding the facts and circumstances sufficient to establish factual support to support civil citations;

    C.  Providing inadequate training regarding how to intervene to stop other agents, employees, or deputies from unlawfully issuing civil citations;

    D.  Employing and retaining as employees, individuals, such as Defendants, who Bossier City knew or should have reasonable known had dangerous propensities for abusing authority;

    E.  Inadequately supervising, training, controlling, assigning and disciplining employees, individuals, such as Defendants, who Bossier City knew or should have reasonable known had the aforementioned propensities and character traits; and/or

    F.  Maintaining a policy of inaction and an attitude of indifference towards increasing abuses of powers, including by failing to discipline, retrain, investigate, or terminate.

84. Bossier City, through its policymakers, had actual or constructive knowledge of the unlawful policies, practices, and customs alleged hereinabove but nevertheless condoned, tolerated, and through its own inactions thereby ratified such policies, and such policies, practices and customs were a moving force behind the deprivation of Plaintiff's constitutional rights.

85. As a direct and proximate, foreseeable result of the violations of Plaintiff's constitutional rights, Plaintiff suffered injuries including, loss of business revenue, loss of goodwill in the

community, as well as having to incur attorney's fees to defendant against the frivolous complaints brought against it.

86. Plaintiff is entitled to recover all damages allowable for a violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

### COUNT FIVE: 42 U.S.C. § 1983—DUE PROCESS & UNCONSTITUTIONAL VAGUENESS FOR SECTION 14-63 OF THE BOSSIER CITY CODE OF ORDINANCES

87. Plaintiff seeks to have Section 14-63(c) of the Bossier City Code of Ordinances declared unconstitutional for vagueness contrary to the United States Constitution and the Louisiana Constitution's due process provisions.

88. Section 14-63(c) of the Bossier City Code of Ordinances provides in pertinent part, "Excessive or untimely barking, crying, howling or yelping so as to disturb the peace and quiet of a neighborhood or its residents or to disturb the health or repose of the residents… shall be deemed to be the creating of a public nuisance."

89. Section 14-63(c) of the Bossier City Code of Ordinances is unconstitutionally vague as it wholly fails to provide a person of ordinary intelligence fair notice of what is prohibited.

90. Section 14-63(c) of the Bossier City Code of Ordinances is unconstitutionally vague as it is so standardless that it authorizes or encourages seriously discriminatory enforcement.

91. Plaintiff has standing to attack the constitutionality of Section 14-63(c) of the Bossier City Code of Ordinances as Plaintiff was issued a citation for violation the same.

92. Plaintiff is entitled to a declaratory judgment declaring Section 14-63(c) of the Bossier City Code of Ordinances is unconstitutional and attorney's fees pursuant to 42 U.S.C. § 1988.

93. Plaintiff has provided notice to the Louisiana Attorney General, via certified mail, of its intent to have this ordinance declared unconstitutional.

## COUNT FIVE: 42 U.S.C. § 1983—DUE PROCESS & UNCONSTITUTIONAL VAGUENESS FOR SECTION 14-63 OF THE BOSSIER CITY CODE OF ORDINANCES

94. Plaintiff seeks to have Section 46-31(b)(4) of the Bossier City Code of Ordinances declared unconstitutional for vagueness contrary to the United States Constitution and the Louisiana Constitution's due process provisions.

95. Section 46-31(b)(4) of the Bossier City Code of Ordinances provides in pertinent part, "The following acts, among others, are declared to be loud, disturbing and unreasonable noises and noises in violation of this section… The keeping of any animal, bird or fowl which by causing frequent or long continued noise shall disturb the comfort or repose of any person in the vicinity."

96. Section 46-31(b)(4) of the Bossier City Code of Ordinances is unconstitutionally vague as it wholly fails to provide a person of ordinary intelligence fair notice of what is prohibited.

97. Section 46-31(b)(4) of the Bossier City Code of Ordinances is unconstitutionally vague as it is so standardless that it authorizes or encourages seriously discriminatory enforcement.

98. Plaintiff has standing to attack the constitutionality of Section 46-31(b)(4) of the Bossier City Code of Ordinances as Plaintiff was issued a citation for violation the same.

99. Plaintiff is entitled to a declaratory judgment declaring Section 46-31(b)(4) of the Bossier City Code of Ordinances is unconstitutional and attorney's fees pursuant to 42 U.S.C. § 1988.

100.      Plaintiff has provided notice to the Louisiana Attorney General, via certified mail, of its intent to have this ordinance declared unconstitutional.

## COUNT SIX: LOUISIANA STATE LAW CLAIM—ABUSE OF PROCESS

101.      Defendants, as well as their agents, servants, and employees to which they are vicariously liable, caused Plaintiff to be civilly cited for violations which they did not commit and have attempted to coerce Plaintiff in shutting down their business to appease Pennell.

102.    Defendants acted with an ulterior motive in all dealing with Plaintiff and not in the regular course of the job.

103.    As a direct and proximate, foreseeable result of the violations of Plaintiff's constitutional rights, Plaintiff suffered injuries including, loss of business revenue, loss of goodwill in the community, as well as having to incur attorney's fees to defendant against the frivolous complaints brought against it.

## COUNT SEVEN: LOUISIANA STATE LAW CLAIM—MALICIOUS PROSECUTION

104.    Defendants, as well as their agents, servants, and employees to which they are vicariously liable, caused Plaintiff to be civilly cited for violations which they did not commit and have attempted to coerce Plaintiff in shutting down their business to appease Pennell.

105.    Defendants acted with an ulterior motive in all dealing with Plaintiff and not in the regular course of the job.

106.    As a direct and proximate, foreseeable result of the violations of Plaintiff's constitutional rights, Plaintiff suffered injuries including, loss of business revenue, loss of goodwill in the community, as well as having to incur attorney's fees to defendant against the frivolous complaints brought against it.

107.    This cause of action applies only insofar as to the civil citations which were issued against Plaintiff and then dismissed.

## COUNT EIGHT: LOUISIANA STATE LAW CLAIM—CIVIL CONSPIRACY

108.    Upon information and belief, Defendants entered into an agreement whereby they would assist one another with a campaign of harassment against Plaintiff.

109.    Defendants' conduct is willful, malicious, and done with bad faith.

110.       As a direct and proximate, foreseeable result of the violations of Plaintiff's constitutional rights, Plaintiff suffered injuries including, loss of business revenue, loss of goodwill in the community, as well as having to incur attorney's fees to defendant against the frivolous complaints brought against it.

## COUNT NINE: LOUISIANA STATE LAW CLAIM—NEGLIGENT HIRING, TRAINING AND/OR SUPERVISION

111.       At all relevant times hereto, the employees, agents and/or deputies of Bossier City, including Defendants, were acting under the color of state law and pursuant to the polices and customs of Bossier City.

112.       Bossier City owed a duty to Plaintiff to properly to properly screen, hire, train, supervise and control its agents, employees and deputies, including Defendants.

113.       Notwithstanding that duty, Bossier City breached that duty by the acts alleged herein.

114.       As a direct and proximate, foreseeable result of the violations of Plaintiff's constitutional rights, Plaintiff suffered injuries including, loss of business revenue, loss of goodwill in the community, as well as having to incur attorney's fees to defendant against the frivolous complaints brought against it.

115.       Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF prays for the following relief from this Court:

A.  That this Honorable Court enter a permanent injunction enjoining Defendants, their agents, officials, employees, assigns, and all persons active in concert or participation with them, or any of them, from continuing their bad faith prosecution and campaign of harassment against Red Rover.

B.  Compensatory damages as to all Defendants;

C.  Reasonable attorney's fees and costs;

D.  Interest;

E.  That the Plaintiff be provided a trial by jury for those matters triable by a Jury;

F.  Such other financial or equitable relief as is reasonable and just.

SUBMITTED BY:

*/s/ Allison A. Jones*
Allison A. Jones, T.A, Bar #16990
Marcus D. Sandifer, Bar # 3932
DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, Louisiana 71101
Tel: 318-213-4444
Fax: 318-213-4445
Email: ajones@dhw-law.com
Email: msandifer@dhw-law.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RED ROVER GROUP, LLC                     :       CIVIL ACTION NO._____

VERSUS                                   :       JUDGE:

CITY OF BOSSIER CITY; STEVEN             :       MAGISTRATE JUDGE:
PENNELL, *in his individual and official
capacity;* WADE RICH, *in his individual and
official capacity,* Rodney Taylor, *in his
individual and official capacity,* and
CHARLES JACOBS, *in his official capacity.*

### **VERIFICATION**

BEFORE ME, the undersigned Notary Public, personally came and appeared CODY MCKELLAR, who did depose and state that he is one of the Plaintiffs in the foregoing Complaint, that he has read the Complaint, and that all of the allegations contained therein are true and correct to the best of his knowledge, information and belief.

_____
CODY MCKELLAR

SWORN TO AND SUBSCRIBED before me, Notary Public, this 19th day of November, 2023.

_____
NOTARY PUBLIC



MARCUS DYLAN SANDIFER
Notary Public
State of Louisiana
Caddo Parish
Notary ID # 170898
My Commission is for Life

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RED ROVER GROUP, LLC                 :        CIVIL ACTION NO._____

VERSUS                               :        JUDGE:

CITY OF BOSSIER CITY; STEVEN         :        MAGISTRATE JUDGE:
PENNELL, *in his individual and official*
*capacity;* WADE RICH, *in his individual and*
*official capacity*, Rodney Taylor, *in his*
*individual and official capacity*, and
CHARLES JACOBS, *in his official capacity.*

## **VERIFICATION**

BEFORE ME, the undersigned Notary Public, personally came and appeared QUENTIN

KOURY, who did depose and state that he is one of the Plaintiffs in the foregoing Complaint, that

he has read the Complaint, and that all of the allegations contained therein are true and correct to

the best of his knowledge, information and belief.

_____
QUENTIN KOURY

SWORN TO AND SUBSCRIBED before me, Notary Public, this _29th_ day of

November, 2023.

_____
NOTARY PUBLIC



MARCUS DYLAN SANDIFER
Notary Public
State of Louisiana
Caddo Parish
Notary ID # 170898
My Commission is for Life